IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH GOOGLE ACCOUNT IDENTIFIER **DRUMMOND330@GMAIL.COM** THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. \_\_7:21mj138_____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Andrew Burton, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with Google account identifier DRUMMOND330@GMAIL.COM that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been since March of 2020. I am currently assigned to the

Roanoke Field Office, Washington Field Division. Prior to my employment with the ATF, I was employed as a Secret Service Uniformed Division Officer for 5 years. As an ATF Special Agent, I have received training and experience regarding investigations involving firearms and narcotics trafficking and the possession of firearms by prohibited persons. Part of my experience involving technology includes having successfully completed the FBI's Cellular Analysis Survey Team Training, which teaches basic cellular analysis and geospatial mapping. Additionally, as a result of my training and experience, I have learned methods commonly used by narcotics and firearms traffickers to engage in unlawful activity. I am familiar with how individuals use electronic devices to coordinate the purchase, sale, transport, and transfer of firearms, and to collect proceeds from illicit sales, maintaining frequent contact with customers and their sources of supply. I am familiar with evidence that is frequently indicative of narcotics trafficking, unlawful firearms possession and firearms trafficking.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(a)(6), have been committed by Jermaine DRUMMOND. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## JURISDICTION

5.      This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A)

& (c)(1)(A). Specifically, the court is a district court of the United States that has jurisdiction over the offense being investigated as defined by 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### CASE INITIATION

6.  In October 2019, ATF submitted a query to the Firearms Transaction Center (FTC) of the Virginia State Police, seeking records of firearm transaction approvals for Sedale YOUNG based on purchaser background checks. Records received from the FTC in response to this inquiry reflected numerous firearms purchase approvals for YOUNG over an eight-month period between February and October 2019. Each such approval was linked to purchases from various Federal Firearms Licensees (FFL) in the Western District of Virginia.

7.  Based on these reports, multiple sales reports, and firearms trace summaries, ATF obtained Form 4473 Firearms Transaction Reports for YOUNG's purchases. These records indicate that YOUNG purchased approximately sixty-nine (69) firearms between February 2, 2019, and October 19, 2019.

8.  ATF began investigating YOUNG for suspected straw purchasing and engaging in the business of dealing in firearms without a federal firearms license, in violation of 18 U.S.C. §§ 922(a)(6) and 922(a)(l)(A).

9.  Your affiant knows from training and experience that it is common for straw purchasers to purchase multiple firearms of the same make and model in a short period of time. For example, between August 21, 2019, and September 27, 2019, YOUNG purchased twenty-six (26) Taurus, Model G2C semi-automatic pistols in either .40 caliber or 9mm, eight of which have been recovered by law enforcement in connection with criminal activity.

10. A number of firearms purchased by YOUNG have been recovered from crime scenes and from individuals suspected of criminal activity. Firearm trace summaries and corresponding police reports indicate that 21 firearms purchased by YOUNG were recovered by law enforcement between September 5, 2019 and March 22, 2021, in connection with criminal investigations in several states between Virginia and New York.

11. Several of these firearms were recovered within days of YOUNG's purchase. For example, four firearms were recovered by police in Waldorf, Maryland on September 5, 2019, and were found in new condition in the original manufacturer's box. These firearms had been purchased by YOUNG in Roanoke, Virginia on three separate occasions just before they were recovered in Maryland—August 27, 2019, September 2, 2019, and September 3, 2019.

12. During a voluntary interview with investigators conducted at YOUNG's residence in November, 2019, YOUNG insisted that he still possessed each of the firearms he had purchased and claimed to be storing them in multiple locations. YOUNG ultimately terminated the interview and invoked his right to counsel.

SUMMARY OF INTELLIGENCE OBTAINED FROM YOUNG'S CELL PHONE

13. On April 30, 2020, ATF secured a federal warrant to search and seize YOUNG's cellular device assigned call number (540) 519-3890. Text messages between YOUNG and others reveal YOUNG was knowingly involved in firearms trafficking.

14. Agents identified several text exchanges between YOUNG and phone number (540) 519-7404, believed to be associated with Jermaine DRUMMOND. On September 10, 2021, investigators obtained subscriber information from U.S. Cellular for the

aforementioned number. It is associated with an account containing three cell phone numbers, all registered to Mia DRUMMOND, Jermaine DRUMMOND's wife.

15. Jermaine DRUMMOND is a convicted felon and cannot lawfully purchase or possess a firearm.

16. Text messages between YOUNG and J. DRUMMOND appear to concern requests for the purchase of firearms. An example of such a text exchange follows, in which J. DRUMMOND asks YOUNG for ten Taurus model G2Cs:

| **Date** | **Young** | **J. Drummond** |
|---|---|---|
| September 22, 2019 | | "I need 10 G2's for both of them." |
| | "Copy!!" | |
| | | . . . |
| September 23, 2019 | | |
| | . . . | |
| | | . . . |
| | . . . | |
| | . . . | |
| | | . . . |
| | "2250 for 10" | |
| | "Don't got them" | |
| | "Call me when you can" | |
| | . . . | |
| | | . . . |
| | . . . | |
| | . . . | |
| September 24, 2019 | | "Aye did you talk to Walt?" |
| | "No didn't get chance too" | |
| September 25, 2019 | "No answer they might be closed already" | |
| September 26, 2019 | | "You on point for this morning?" |
| | | "8909" |
| | "1,087.79" | |
| | | "Ok" |
| | | "I got 1020" |
| | "I only came up with a lil | |

5

| | |
|---|---|
| 20 so far, timing off my peoples don't get off til later the 4" | |
| | "Stand by" |
| "Bet" | |
| | "My wife's gonna give us 50" |

17. ATF Form 4473 records show YOUNG purchased 10 Taurus G2C pistols on September 26, 2019 from SWVA Arms. Financial transaction records from SWVA Arms show that on September 26, 2019, there was a credit card transaction for $900 charged on a Visa card bearing Jermaine DRUMMOND's name. The email account associated with the transaction is sedaleyoung@gmail.com.

18. Two of the firearms purchased by YOUNG on September 26, 2019 have been recovered by police in the Washington, DC / Maryland area.

19. Investigators identified within YOUNG's text messages approximately 8 examples of text requests from J. DRUMMOND for certain makes or models of firearms, for which there are corresponding Form 4473s documenting purchases of those firearms by YOUNG on the same date. These 8 examples of straw purchases involve a total of 18 firearms, three of which were later recovered by law enforcement in connection with criminal activity.

### SUMMARY OF INTELLIGENCE CONCERNING JERMAINE DRUMMOND'S CELL PHONE

20. Records obtained from U.S. Cellular show IMEI 35426811298231 as the device being used by phone number (540) 519-7404, believed to be associated with J. DRUMMOND. This device is listed as a Samsung Galaxy S20, a device commonly known as an Android.

21. Based on my training and experience, I know that Android devices commonly require an account with GOOGLE LLC, which provides backup services for the content of the phone.

22. On September 13, 2019 your affiant received subscriber information from Google LLC in response to a subpoena for the device IMEI 35426811298231, assigned phone number (540) 519-7404. The subscriber information shows the account is listed under the email address DRUMMOND330@GMAIL.COM. The subscriber name associated with this account is Jad _Luv. The recovery email associated with this account, in the event the account user forgets his or her password, is Jermainedrummond@ymail.com. The Google Pay account information contains three addresses for Jermaine DRUMMOND and 8 credit cards all in Jermaine DRUMMOND's name.

23. The subscriber information received from Google also confirmed the account used the following services: Gmail, Google Hangouts, Android, Google Calendar, Location History, YouTube, Google Photos, Google Payments, Google Chrome Sync, Google Play, Google Developers Console, Web & App Activity, Google Play Music and Google My Map.

24. Your affiant sent GOOGLE LLC a preservation request on September 13, 2021, with Google Reference number 6618940.

25. I know from my training and experience that individuals engaged in illegal firearms trafficking frequently use text, voice calls, social media and other applications to communicate and further their criminal activities.

26. Specifically, individuals use cellular devices to coordinate the purchase, sale, transport, and transfer of firearms, and to collect proceeds from illicit sales, maintaining frequent contact with customers and their sources of supply.

27. I further know from my training and experience that Android devices commonly backup these kinds of communication data to GOOGLE servers.

BACKGROUND CONCERNING GOOGLE[1]

28. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

29. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

30. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

---

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

31. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

32. Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them. Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android mobile phone or device address book with their account so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar. Google provides an appointment book for Google Accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified

intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars.  Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention.  Google does not retain Duo voice calls, though it may retain video or voicemail messages.  Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages. If a user subscribes to Google's cloud storage service, Google One, they can opt to backup all the data from their device to Google Drive. Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the

user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

33. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

34. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

35. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

36. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

37. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

38. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the

Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

39.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

40.     Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. For example, one text message between YOUNG and J. DRUMMOND outlines the use of Cash App, an application downloaded from the GOOGLE Play Store: "I sent him the last 10 I had on cash app for ya. Did he get to yet?" In addition, emails, instant messages, Internet activity, documents, contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

41. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

42. Based on the forgoing, I request that the court issue the proposed search warrant.

43. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

44. I further request that the court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

**ANDREW BURTON** Digitally signed by ANDREW BURTON
Date: 2021.09.27 13:32:44 -04'00'

Andrew Burton
Special Agent
Bureau of Alcohol Tobacco and Firearms

Subscribed and sworn to before me on _____September 28_____, 2021 by telephone.

*Robert S. Ballou*
UNITED STATES MAGISTRATE JUDGE